The **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY and Dennis Tamcsin, Appellants–Defendants,**

v.

David A. **STINNETT, Appellee–Plaintiff.**

No. 87A01–9708–CV–278.

Court of Appeals of Indiana.

July 31, 1998.

Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, Maurice J. McSweeney, Nancy J. Sennett, Foley & Lardner, Milwaukee, WI, Paul F. Heaton, The Northwestern Mutual Life Insurance Company, Milwaukee, WI, for Appellants–Defendants.

S. Anthony Long, Boonville, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellants Northwestern Mutual Life Insurance Company and Dennis Tamcsin (hereinafter referred to collectively as Defendants) appeal the trial court's denial of their motion to dismiss the action brought by Plaintiff–Appellee David A. Stinnett (Stinnett).

We reverse.

### ISSUES

Two issues are presented for our review, which we restate and consolidate as:

1. Whether this court has jurisdiction over the uncertified appeal from the denial of a motion to dismiss, and

2. Whether Stinnett is required to arbitrate his claims against Defendants.

### FACTS AND PROCEDURAL HISTORY

Stinnett was employed by Northwestern Mutual Life Insurance Company (Northwestern Mutual) selling insurance and financial products as an independent contractor with the Smith General Agency in Evansville, Indiana. To do this Stinnett applied to be registered with the New York Stock Exchange and the National Association of Securities Dealers, Inc. by executing an application commonly known as form U–4. The U–4 signed by Stinnett on November 21, 1988, contained a provision requiring arbitration of disputes which may arise between Stinnett and his firm or customers or as required by the New York Stock Exchange or the National Association of Security Dealers, Inc. When Stinnett left Northwest Mutual he entered into a termination agreement to resolve a number of matters remaining between the parties. The termination agreement contained no arbitration provision.

On March 1, 1996, Stinnett filed this action against the Defendants for breach of the termination agreement and for communicating false and misleading information to current and former clients and individuals with whom he has a contractual relationship. Defendants answered the complaint and then moved to dismiss the complaint on the grounds that it must be arbitrated. On June 18, 1997, the trial court denied the motion to dismiss finding that Stinnett's requirement to arbitrate the dispute was waived by the termination agreement. The Defendants then brought this appeal without trial court certification, filing their praecipe on July 7, 1997, and the record on August 28, 1997. Additional facts will be provided as needed.

### DISCUSSION AND DECISION

#### I. Jurisdiction

■ The first issue we will address was raised by Stinnett in his motion to dismiss the appeal. Defendants appeal from the trial court's ruling on their motion to dismiss the action. Stinnett argues that this court is without jurisdiction to hear this appeal in that it is not a final judgment or appealable final order and it is filed too late for an interlocutory appeal. On the other hand, Defendants maintain that the court's ruling on the motion to dismiss is an appealable final order. Except for special interlocutory orders, appeals may only be taken from final judgments. Ind.Appellate Rule 4. "Generally

a final judgment is one which disposes of all of the issues as to all the parties and puts an end to the matter in question." *Lipginski v. Lipginski*, 476 N.E.2d 924, 926 (Ind.Ct.App. 1985) (citing *Thompson v. Thompson*, 259 Ind. 266, 286 N.E.2d 657 (1972)).

In *International Creative Management, Inc. v. D & R Entertainment Co., Inc.*, we held that a trial court order denying a petition to compel arbitration is appealable as a matter of right, and as such need not be certified. 670 N.E.2d 1305, 1310 (Ind.Ct. App.1996), *reh'g denied, trans. denied.* Stinnett attempts to distinguish this case in that in *International Creative Management, Inc.* the appeal was brought pursuant to a petition to compel arbitration rather that the motion to dismiss, as is the case here. With a petition to compel arbitration, the denial of such is a final determination of that issue and thus appealable. *Id.* Whereas, a motion to dismiss is merely one of many motions throughout the course of the case, and not necessarily a final appealable order under App.R. 4(B).

However, App.R. 4(E) states:

No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the court below.

App.R. 4(E). Furthermore, "[w]e have declined to dismiss improperly brought appeals and retained jurisdiction of the appeal under A.R. 4(E) in cases of a significant public interest and where the same issue would be raised in a new appeal." *Evansville–Vanderburgh Sch. Corp. v. Evansville Teachers Assoc.*, 494 N.E.2d 321, 324 (Ind.Ct.App.1986). In *Evansville–Vanderburgh Sch. Corp.* we held that the issue of arbitration is of such importance because of the possibility of submitting the parties to useless and unnecessary arbitration proceedings. *Id.* We hold that this is also true of the possibility of submitting parties to trial court proceedings

when there should first be arbitration. Therefore, we decline to dismiss the appeal under App.R. 4(E). *See Montgomery v. Estate of Montgomery*, 677 N.E.2d 571, 574, n. 3 (Ind.Ct.App.1997) (reviewing an appeal which is neither interlocutory nor final appealable order).

## II. Arbitration

■ The issue raised by Defendants on their appeal is whether the court erred in denying their motion to dismiss in favor of arbitration. Therefore, we must determine whether the arbitration clause of the U–4 controls or the termination agreement, which includes no arbitration requirements.

■ "Arbitration is a matter of contract and a party cannot be required to submit to arbitration unless he has agreed to do so." *International Creative Management, Inc.*, 670 N.E.2d at 1311. Therefore, we must first determine whether the parties have agreed to arbitrate this particular dispute. *Id.* The parties agree that the U–4, New York Stock Exchange, and the National Association of Securities Dealers, Inc. include arbitration provisions and that the termination agreement does not. The argument we are presented with is not whether the parties contracted to arbitrate, but which contract controls the present dispute.

The U–4 signed by Stinnett contains the following provision:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register. . . .

(R. 92). Furthermore, the U–4 provides:

I hereby apply for registration with the organizations and states indicated in item 10, . . . I submit myself to the jurisdiction of such states and organizations and hereby certify that I agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and

may be adopted, changed or amended from time to time. . . .

(R. 92). The organizations that Stinnett registered with pursuant to the U–4 were the New York Stock Exchange and the National Association of Securities Dealers, Inc. Both organizations contain very broad arbitration provisions requiring arbitration of disputes involving any members and arising from the member's business as an associate of the organization. (R. 124, 126). Furthermore, the provision for the National Association of Security Dealers, Inc. specifically includes disputes arising out of employment or termination of employment of the associated member. (R. 126).

Although Stinnett signed the U–4 and joined the New York Stock Exchange and the National Association of Security Dealers, Inc. because of his employment with Defendants, they are totally separate relationships. Therefore, we agree with Defendants and the reasoning of the Fourth Circuit in *Zandford v. Prudential–Bache Sec., Inc.* in finding that the termination agreement signed by the parties does not supersede the arbitration provisions entered into by Stinnett as a result of the U–4. 112 F.3d 723 (4th Cir.1997).

In *Zandford* the parties had entered into a settlement agreement in response to a dispute arising from Zandford's termination. *Id.* After the settlement had been entered by the court, Zandford filed suit against Prudential–Bache Securities, Inc. alleging breach of settlement agreement, intentional interference with business relationships, and intentional infliction of emotional distress. While Zandford argued that the dispute arose from the settlement agreement and was, therefore, not subject to the arbitration requirements of the New York Stock Exchange, the court agreed with Prudential–Bache Securities, Inc. in finding that the dispute did ultimately arise from the employment relationship and compelled arbitration. *Id.*

In determining whether the dispute arose from employment, the Fourth Circuit applied a test adopted by the Eighth Circuit and looked at whether the claim involved significant aspects of the employment relationship. *Id.* at 728 (citing *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir.1984)). This test has been further elaborated: "the proper question is whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual relationship." *Zandford*, 112 F.3d at 729 (quoting *Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 109 (6th Cir.1985), *cert. denied* ).

The claims involved here are breach of the termination agreement and communicating false and misleading information to current and former clients and individuals with whom he has a contractual relationship. More specifically, Stinnett's complaint alleges that Defendants: concealed or reversed vested, earned, paid, and unpaid commissions due Stinnett; canceled, modified, or replaced policies of insurance sold by Stinnett to reduce commissions due him, and communicated misleading or false information about Stinnett and his clients' insurance policies. All of these disputes arise from the fact that: Stinnett sold insurance for Defendants; he is still receiving payment from Defendants for said policies, and how Stinnett serviced those policies. Stinnett's claims ultimately involve significant aspects of the employment relationship and resolution depends on the parties broker-employer relationship. Therefore, like in *Zandford,* the dispute falls within the arbitration provisions set forth by the New York Stock Exchange and the National Association of Securities Dealers, Inc.

Stinnett disputes the application of *Zandford* to this case for two reasons. The first is that the dispute did not arise out of the employment relationship but the termination agreement. As discussed above, we disagree. The second is that the termination agreement explicitly waived all prior claims between the parties and provided for disputes to be settled by a court of competent jurisdiction. This argument does not defeat the fact that the requirement to arbitrate arises from a relationship separate from the relationship between the parties. The arbitration requirement arises from Stinnett's relationship with the New York Stock Exchange and the National Association of Security Dealers, Inc. as a member of those organizations. Therefore, Defendants had no

power by contract to release Stinnett from the arbitration obligations assumed in his U–4 which ran to those organizations and not to Defendants. *Zandford,* 112 F.3d at 727.

 It is well known that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 102 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* The termination agreement between Stinnett and Defendants did not supersede Stinnett's contracts with. the National Association of Securities Dealers, Inc. and the New York Stock Exchange which require arbitration. Furthermore, the claims made by Stinnett clearly fall within the realm of those organizations and, therefore, must first be arbitrated.

### CONCLUSION

We entertain this appeal under App.R. 4(E) and find that the trial court erred in denying Defendants' motion to dismiss.

Reversed.

SHARPNACK, C.J., and BAILEY, J., concur.