Dennis C. **BIELFELDT**, Katherine O'Neill, Leonidas Kopulos, Randall E. Hayes, and Daniel A. Holtz, Appellants,

v.

**Ernst R. NIMS, Appellee.**

No. 45A03–0305–CV–170.

Court of Appeals of Indiana.

March 23, 2004.

Rehearing Denied June 9, 2004.

David C. Jensen, John P. Twohy, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellants.

David E. Wickland, Munster, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Dennis C. Bielfeldt, Katherine O'Neill, Leonidas Kopulos, Randall E. Hayes, and Daniel A. Holtz (collectively referred to as "Defendants") appeal the denial of their Motion to Compel Arbitration of the claims filed against them by Ernst R. Nims. Defendants present the following restated issue for review: Did the trial court erroneously deny their motion to compel arbitration?

We reverse.

Raymond James & Associates, Inc. is a broker-dealer registered with the Securities and Exchange Commission (SEC) and is a member of the National Association of Securities Dealers (NASD) and various other securities exchanges. Raymond James & Associates, Inc. is the successor in interest to Roney & Co. (Roney), a regional broker-dealer with an office in Munster, Indiana. In June 1999, Raymond James Financial, Inc. purchased Roney and, thereafter, merged Roney with another of its subsidiaries, Raymond James & Associates, Inc. The resulting entity retained the name Raymond James & Associates, Inc. (Raymond James). Following the merger, regulators did not require Roney's registered representatives to again register their association with Raymond James, as Raymond James assumed the continuation of former Roney brokers' registrations. Nims and each defendant, at all relevant times, were registered representatives with the NASD, among other organizations.

On November 1, 2002, Nims filed a complaint against several of his former coworkers at the Raymond James brokerage office in Munster, Indiana, where he was

formerly employed as branch manager and a licensed securities broker. Count I of the complaint alleged that Defendants tortiously interfered with Nims's employment relationship with Raymond James. The complaint specifically alleged in relevant part:

5. That beginning in approximately the summer of 2000, and continuing through and including November 15, 2000, the defendants, and each of them, knowing that plaintiff was an employee and branch manager of the Munster office of Raymond James & Associates, Inc., tortiously and intentionally, for their own personal gain, induced the superiors of plaintiff to terminate the contract of employment with the said Raymond James & Associates, Inc., and induced the said corporation to terminate plaintiff's employment as branch manager in the Munster, Indiana office.

6. That further, beginning in approximately the summer of 2000, and continuing through and including December 7, 2000, the defendants, and each of them, knowing that plaintiff was an employee of the Munster office of Raymond James & Associates, Inc., as a licensed securities broker, contacted superior representatives of said Raymond James & Associates, Inc., tortiously and intentionally, for their own personal gain induced the superiors of plaintiff to transfer the employment of plaintiff as a licensed securities broker with said Raymond James & Associates, Inc. to Chicago, Illinois and induced the said corporation to terminate plaintiff's employment as a licensed securities broker in the Munster, Indiana office.

*Appendix* at 1–2. Count II of the complaint alleged that in the fall of 2000 and continuing into early December of 2000, Katherine O'Neill falsely and maliciously accused Nims of sexual harassment and immoral conduct in the workplace with the purpose of harming Nims's trade, profession, and business.

On December 13, 2002, Defendants filed as their responsive pleading a motion to compel arbitration, together with a supporting memorandum of law. Following a contested hearing, the trial court denied Defendants' motion to compel arbitration. In its Order of April 10, 2003, the trial court explained the denial as follows:

2. Defendants have not established that there was, in fact, an agreement to arbitrate claims between plaintiff's former employer Raymond James & Associates, Inc. and the plaintiff.

3. A claim for tortuous [sic] interference, as the Plaintiff has made in his complaint, is not the kind of claim contemplated by NASD Rule 10201 which mandates arbitration.

*Appendix* at 83. Defendants now appeal.

When reviewing the denial of a motion to compel arbitration, our standard of review is de novo. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.*, 790 N.E.2d 595 (Ind.Ct.App.2003). Indiana and federal law recognize a strong policy of favoring enforcement of arbitration agreements. *See, e.g., Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Polinsky v. Violi*, 803 N.E.2d 684 (Ind.Ct. App.2004). The party seeking to compel arbitration has the burden of demonstrat-

ing the existence of an enforceable arbitration agreement and that the disputed matter is the type of claim intended to be arbitrated under the agreement. *See Polinsky v. Violi.* When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.,* 790 N.E.2d 595. "In addition, '[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration,' and 'the parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used.'" *Id.* at 598 (quoting *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001)). Parties are bound to arbitrate, however, only those issues that by clear language they have agreed to arbitrate, as arbitration agreements will not be extended by construction or implication. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.,* 790 N.E.2d 595.

Upon being employed by Roney in 1994, Nims completed and signed a "Form U–4 Uniform Application for Securities Industry Registration or Transfer" (Form U–4), registering his association with Roney and applying for registration with the NASD and other exchanges. Under the heading "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY", Nims's Form U–4 contains the following provisions:

  2.  I apply for registration with the jurisdictions and organizations indicated in Item 10 as may be amended from time to time and, in consideration of the jurisdictions and organizations receiving and considering my application, I submit to the authority of the jurisdictions and or-

ganizations and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and organizations, subject to right of appeal or review as provided by law.

\* \* \*

  5.  I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgement in any court of competent jurisdiction.

*Appendix* at 26. The organizations listed in Item 10 of Nims's Form U–4 include the NASD.

NASD's Code of Arbitration Procedure Rule 10201(a), entitled "Required Submission," provides as follows:

  (a) Except as provided in paragraph (b) or Rule 10216,[1] a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connec-

---

**1.**  Paragraph (b) provides that claims alleging employment discrimination, including sexual harassment claims, in violation of a statute are not required to be arbitrated. Rule 10216 addresses coordination of claims filed in court and in arbitration.

tion with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the insistence of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) *a person associated with a member against a person associated with a member.*

*Appendix* at 27 (emphasis supplied). Defendants claim that Nims is bound by the agreement to arbitrate, contained in the Form U–4 and corresponding NASD rule, and that it was the intent of Nims and the NASD, as expressed in said agreement, that disputes such as those in the instant case be submitted to NASD arbitration.

As set forth above, the trial court's first basis for denying the motion to compel arbitration was that Defendants failed to demonstrate an agreement to arbitrate between Nims and Raymond James. While this may be true, we observe that such a finding is inapposite to the issue at hand, as Raymond James is not a party in this case and Defendants have never relied upon an agreement between Nims and Raymond James to establish their right to arbitration. Rather, Defendants have consistently cited the Form U–4 agreement to arbitrate that Nims entered into with the NASD.

■ Contrary to Nims's apparent misguided belief,[2] the arbitration obligations assumed in his Form U–4 ran to the NASD, as well as the other organizations with which he registered, and not to his employer (whether Raymond James or Roney). *See Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723, 727 (4th Cir.1997) ("such agreements are with securities exchanges rather than with individual employers") (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)); *Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339 (Ind.Ct.App.1998). This is true because the arbitration requirement arises from Nims's relationship with the NASD as a member of that organization. *See Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d at 342 ("[a]lthough Stinnett signed the U–4 and joined the New York Stock Exchange and the [NASD] because of his employment with Defendants, they are totally separate relationships" and "the termination agreement signed by the parties does not supersede the arbitration provisions entered into by Stinnett as a result of the U–4") (citing *Zandford v. Prudential–Bache Sec., Inc.,* 112 F.3d 723). Because the arbitration agreement was entered into between Nims and the NASD, the subsequent merger between Roney and Raymond James did not alter Nims's arbitration agreement with the NASD.[3] *Cf. Zandford v. Pruden-*

---

**2.** For example, Nims's incorrectly asserts: "The Form U–4 that Nims did in fact execute was between his former employer Roney and Nims." *Appellee's Brief* at 5.

**3.** Nims concedes that he undertook the same duties and responsibilities as a branch manager and broker with Raymond James as he did with Roney. Thus, Nims acted as a broker for more than one year following the merger. Were we to take Nims's argument to its logical end, we would have to conclude that Nims was unlawfully trading securities without being registered with any securities exchange or in any jurisdiction. Based upon evidence in the record, however, it is clear that Nims's Form U–4 remained in effect after the merger and "the NASD did not require [Raymond James] to file Forms U–5, Forms U–4, or fingerprint cards on behalf of the brokers of Roney & Co." *Appendix* at 74.

tial–Bache Sec., Inc., 112 F.3d at 728 (noting that, despite termination of employment with defendant, plaintiff "remained a member of the securities exchanges and subject to their requirements when the events leading to this lawsuit occurred").

Having determined that Nims is bound by the NASD arbitration agreement, we now turn to whether his claims against Defendants are the type of claims contemplated by NASD Rule 10201. NASD arbitration provisions are "very broad", Northwestern Mut. Life Ins. Co. v. Stinnett, 698 N.E.2d at 342, and encompass claims arising in connection with the business of a member (i.e., Raymond James) or the activities of an associated person (i.e., Defendants or Nims), or arising out of the employment or termination of employment of an associated person. See NASD Rule 10201(a). With regard to the latter, we observe that the specific source from which a controversy must arise is not the employment contract; it is simply employment or termination of employment. Cf. Zandford v. Prudential–Bache Sec., Inc., 112 F.3d 723 (interpreting similar arbitration provision in NYSE rules). In this regard, we look to " 'whether resolution of the claim depends upon evaluation of a party's performance either as a broker or as an employer of brokers during the time of the contractual' " Northwestern Mut. Life Ins. Co. v. Stinnett, 698 N.E.2d at 342 (quoting Zandford v. Prudential–Bache Sec., Inc., 112 F.3d at 729).

Nims argues that the underlying claims in his complaint involve false accusations of sexual harassment and, therefore, do not involve matters arising out of or in connection with Raymond James's business or involve an evaluation of Nims's performance as a broker. We do not view the claims so narrowly. First, we cannot agree that the complaint is necessarily limited to claims of false accusations of sexual harassment. Rather, the first count of the complaint, the tortious interference claim, makes no mention of sexual harassment allegations, and the defamation claim refers broadly to false accusations of "immoral conduct in the workplace" as well as sexual harassment. Appendix at 3.

Moreover, at the heart of Nims's complaint is his claim that Defendants tortiously induced Raymond James to terminate Nims's employment with the firm as branch manager and broker in the Munster, Indiana office. Determination of his claims will necessarily involve an evaluation of Nims's performance and conduct as a broker and branch manager with Raymond James and inquiry into why Raymond James terminated Nims's employment with the branch. Examination of Nims's activities as a branch manager, including his supervision of and interaction with Defendants, will also be integral to the resolution of this dispute.

Mindful of our obligation to resolve any doubts in favor of arbitration, we conclude that the claims made by Nims against Defendants fall within the realm of NASD Rule 10201 and, therefore, must be arbitrated. The trial court erred in denying Defendants' motion to compel arbitration.

Reversed.

RILEY, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur that Count I of Nims's complaint is subject to arbitration. I disagree, however, as to Count II of the complaint.

Although Nims's claim is one of false accusation of sexual harassment by O'Neill rather than an act of sexual harassment

itself, the false allegation claim is inextricably intertwined with the act of which Nims was allegedly accused. Accordingly, I would hold that Nims's claim of false accusation is not required to be arbitrated. NASD Code of Arbitration Procedure Rule 10201(b).

I do not read NASD Arbitration Rule 10216, referenced by the majority in Footnote 1, to provide for coordination of Nims's two separate claims under Counts I and II. The Rule addresses a claim asserted by a party either in arbitration or in a court and coordination of a related claim by a respondent to the claim of the party.

I would reverse as to Count I but would affirm as to Count II.