**DAIMLER CHRYSLER CORPORATION, Appellant–Defendant,**

v.

**Samuel YAEGER and Diane Yaeger, Appellees–Plaintiffs.**

**No. 55A05–0402–CV–65.**

Court of Appeals of Indiana.

Dec. 1, 2004.

---

Jeffrey P. Smith, W. Randall Kammeyer, Fort Wayne, IN, Attorneys for Appellant.

Scott M. Cohen, John D. Barker, Chicago, IL, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Daimler Chrysler Corporation ("Daimler") appeals the trial court's denial of its motion to dismiss and compel Plaintiffs–Appellees Samuel Yaeger and Diane Yaeger ("the Yaegers") to submit to arbitration. We reverse and remand with instructions.

We consider the following issues in our review of the trial court's determination:

I. Whether Daimler's appeal should be dismissed because it failed to certify its interlocutory appeal under the Indiana Rules of Appellate Procedure.

II. Whether the trial court erred as a matter of law in determining that the Yaegers did not consent to the arbitration provisions of the contract when Diane applied for and obtained special financing for the purchase of the vehicle.

III. Whether the trial court erred as a matter of law in determining that the arbitration provision of the contract is prohibited by the Magnuson–Moss Act.

IV. Whether the trial court erred as a matter of law in determining that the arbitration provision should be held unenforceable because it was not approved by the Indiana Attorney General.

On or about May 16, 2002, the Yaegers purchased a 2002 Chrysler PT Cruiser from Community Motors. The vehicle was manufactured by Daimler, which warranted that for three years or thirty-six thousand miles it would repair any defects in materials or workmanship in or on the vehicle. Shortly after the Yaegers took possession of the PT Cruiser, the vehicle began to exhibit defects in the power steering mechanism, the engine, and the blower motor.

The Yaegers took the vehicle to Daimler for repairs on more than one occasion, but they were not satisfied with the results. On December 9, 2002, the Yaegers notified Daimler of their intent to revoke acceptance of the vehicle. Due to Daimler's refusal to recognize the request for revocation of acceptance, the Yaegers filed a complaint alleging breach of express warranty, breach of implied warranty, violation of the Indiana Motor Vehicle Protection Act ("Indiana Lemon Law"), and revocation of acceptance pursuant to the Magnuson–Moss Warranty Act.

Daimler filed a motion to compel arbitration and to dismiss the Yaegers' appeal. The trial court heard oral argument on the motion and then issued an order denying the motion on the bases that (1) Samuel Yaeger did not consent to binding arbitration and Diane Yaeger did not knowingly consent to binding arbitration; (2) the arbitration clause contained in the contract is unenforceable under the Magnuson–Moss Act; and (3) there was no evidence that Daimler's arbitration plan had been approved by the Indiana Attorney General. Appellant's App. at 5. Daimler subsequently filed this interlocutory appeal.

### I.

■ The Yaegers responded to this appeal by filing a motion to dismiss.[1] In their motion, the Yaegers contend that Daimler failed to comply with the requirements of the appellate rules that govern the filing of an interlocutory appeal.

The trial court's order denying Daimler's motion to compel arbitration and to

---

1. The Yaegers denominate the motion as a motion to "strike." The intent of the motion is to request that this court dismiss Daimler's appeal.

dismiss is an interlocutory order. Certain interlocutory orders listed in Indiana Appellate Rule 14(A) may be appealed as a matter of right by filing a notice of appeal within thirty days of the entry of the order. The order denying Daimler's motion is not the type of order listed in Subsection (A), and it is therefore not appealable by right under App.R. 14(A). An appeal also may be taken from other interlocutory orders under App.R. 14(B) if the trial court, in its discretion, certifies its order and the Court of Appeals accepts jurisdiction over the appeal. The rule requires the party pursuing a discretionary interlocutory appeal to file a motion requesting certification by the trial court under App.R. 14(B)(1) and to subsequently file a motion requesting acceptance by this court under App.R. 14(B)(2). Daimler did not file either of the motions required by App.R. 14(B).

Daimler does not rely on either App.R. 14(A) or (B) but instead relies on App.R. 14(C), which states that "[o]ther interlocutory appeals may be taken only as provided by statute." Daimler contends that its interlocutory appeal is authorized under the Indiana Uniform Arbitration Act, which states that an appeal may be taken from the denial of an order to compel arbitration. *See*, Ind.Code § 34–57–2–19(a)(1). This statute provides no relief for Daimler, however, because appeals from consumer leases, sales, or loan contracts are specifically exempted from the coverage of the Arbitration Act. Consequently, Daimler has failed to raise its interlocutory appeal under any of the provisions of App.R. 14.

However, as Daimler noted in its response to the Yaegers' motion, our appellate rules give this court discretion to "pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the trial court...." App.R. 66(B). We have "declined to dismiss improperly brought appeals and retained jurisdiction of the appeal under [App.R. 66(B)] in cases of significant public interest and where the same issue would be raised in a new appeal." [2] *Northwestern Mutual Life Insurance Co. v. Stinnett*, 698 N.E.2d 339, 341 (Ind.Ct.App.1998). We have previously held that "the issue of arbitration is of such importance because of the possibility of submitting the parties to useless and unnecessary arbitration proceedings." *Id.* (citing *Evansville–Vanderburgh School Corp. v. Evansville Teachers Association*, 494 N.E.2d 321, 324 (Ind.Ct.App.1986)). We have further held that "this is also true of the possibility of submitting parties to trial court proceedings when there should first be arbitration." *Id.* We note that dismissal of Daimler's appeal and remand to the trial court, only to later determine that the matter should have been arbitrated, would result in a waste of time and money for the parties and an unnecessary burden upon the trial court. Accordingly, we exercise our discretion under App.R. 66(B) and decline to dismiss Daimler's appeal.

## II.

In its motion to compel arbitration, Daimler observed that the Yaegers were given a discounted purchase price on the vehicle through Daimler's employee purchase program. Daimler further observed that in order to receive the discount, Diane signed a "claim form" containing a provision that required every dispute arising out of the transaction to be submitted to a dispute resolution process that included binding arbitration. Specifically, the form

**2.** At the time *Stinnett* was decided, App.R. 4(E) was relevant to this issue. The content of former App.R. 4(E) is now contained in App.R. 66(B).

stated that "in consideration for the discount received, [the customer] will not be able to bring a lawsuit for any disputes relating to this vehicle. Instead, [the customer] agree[s] to submit any and all disputes through the Daimler Chrysler Vehicle Resolution Process, which includes mandatory arbitration that is binding on both Daimler Chrysler and [the customer]." Appellant's App. at 41. The form also provides that the customer represents by signing the document that before purchasing or leasing a vehicle under the employee purchase program, the customer "received and read the Program Rules and Provisions ..., specifically including a copy of the document entitled 'Vehicle Resolution Process—Binding Arbitration.'" *Id.* The program rules outline the various dispute resolution procedures, including the final procedure of binding arbitration, and state that the customer "may not bring a separate lawsuit." *Id.* at 46.

In response to Daimler's motion to compel arbitration, Diane contended in an affidavit that although she signed the claim form for the discount she did not intend to agree to the arbitration requirement. Diane also contended that she signed the document because that is what she had to do "in order to get my discount" and that "at no point did I ever consent to resolve any legal claims against [Daimler] through binding arbitration." Appellant's App. at 77. She also contended that the arbitration provision of the claim form should not be enforced because she did not sign the form on the "customer" line. Samuel contended that he should not be bound by the arbitration provision because he did not sign the claim form. The Yaegers contend that because Daimler's motion to compel arbitration also requested dismissal of their complaint, all facts must be construed in Diane and Samuel's favor. They reason that because they aver that they never intended to be bound by the arbitra-

tion provision and because Diane did not sign the discount claim form on the "customer" line, they have established facts, which when construed in their favor, lead to the denial of Daimler's motion.

Initially, we note that in making its determination the trial court had before it the affidavits submitted by the Yaegers. Where the trial court, in ruling on a motion to dismiss under Indiana Trial Rule 12(B)(6), considered matters outside the pleadings, the motion will be reviewed as a motion for summary judgment. *See In re Estate of Bender,* 806 N.E.2d 59, 66 (Ind. Ct.App.2004). Summary judgment is appropriate where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *King v. Terry,* 805 N.E.2d 397, 399 (Ind.Ct.App.2004).

■ Furthermore, we hold as a matter of law that Diane's signature on the claim form not only manifested her consent to the benefit conferred in the form of a discount but also her legal consent to the conspicuously placed arbitration provision. In Indiana, "a person who signs a contract, without reading the same, will be bound by its terms." *Weaver v. American Oil Co.,* 257 Ind. 458, 276 N.E.2d 144, 152 (1971). This principle is applied to discourage reliance upon assertions, such as those now made by Diane, that are in conflict with the clear terms of the agreement. *See Plymale v. Upright,* 419 N.E.2d 756, 762 (Ind.Ct.App.1981). In arriving at our holding, we have concluded, after examining the complaint and Diane's affidavit, that there is no genuine issue of material fact regarding the fact that Diane purchased the vehicle and that, in doing so, she applied for and received the special discount. We decline to accept her invitation to elevate form over substance by accepting her claim that she should receive

the discount but not be subject to the arbitration provisions because she signed the claim form on the wrong line.

■ We also hold that Samuel is bound by the claim form's arbitration provisions. It is clear from the pleadings and both Diane's and Samuel's affidavits that Diane and Samuel were engaged in a joint enterprise to purchase the vehicle from Daimler. In furtherance of this enterprise, Diane, who was eligible for the special discount because her brother was a Chrysler employee, applied for and received the discount. Both Diane and Samuel accepted the benefit of the discounted price that resulted from Diane's signing of the claim form, and as a matter of law Samuel is now estopped from denying the binding effect of the claim form's provisions. *See Standard Land Corp. of Indiana v. Bogardus,* 154 Ind.App. 283, 289 N.E.2d 803, 824 (1972) (holding that "one who knowingly accepted the benefits of a contract or conveyance is estopped to deny the validity or binding effect on him of such contract or conveyance").

The trial court erred in determining that Diane and Samuel were not bound by the arbitration provisions found in the claim form signed by Diane.

### III.

■ The Yaegers contend that binding arbitration of their dispute with Daimler is prohibited by the Magnuson–Moss Warranty Act ("MMWA"). The Yaegers argue that enforcement of the binding arbitration provision of the contract with Daimler would frustrate the intent of Congress to allow consumers to obtain relief through the filing of civil actions.

Congress passed the MMWA in 1975 to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products...." 15 U.S.C. § 2302(a). In order to advance these goals, § 2310(d) of the MMWA provides a statutory private right of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under written warranty, implied warranty, or service contract...."

Under the MMWA, warrantors may establish "informal dispute settlement mechanisms" to further the congressional goal of encouraging consumers and warrantors to settle their disputes. 15 U.S.C. § 2310(a)(1) (providing that "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms"). The MMWA does not define "informal dispute settlement" mechanisms or procedure, but it does provide that if a warrantor incorporates a § 2310(a) informal dispute settlement mechanism or procedure into the warranty, the provision must comply with the minimum requirements that the Federal Trade Commission prescribes. 15 U.S.C. § 2310(a)(2). If the informal dispute settlement mechanism or procedure complies with the FTC's minimum requirements, and if the written warranty requires that the consumer "resort to such procedure before pursuing any legal remedy under this section respecting such warranty, the consumer may not commence a civil action... under such subsection (d) of this section unless he initially resorts to such procedure...." 15 U.S.C. 2310(a)(3)(C)(i).

■ Before directly addressing the Yaegers' arguments, we must first put the issue in context. In 1925, Congress passed the Federal Arbitration Act ("FAA") to reverse a longstanding hostility towards arbitration and "to place arbitra-

tion agreements on the same footing as other contracts." *See Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268, 1271 (11th Cir.2002), *cert. denied,* 538 U.S. 945, 123 S.Ct. 1633, 155 L.Ed.2d 486 (2003) (citing *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 122 S.Ct. 754, 761, 151 L.Ed.2d 755 (2002); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991)). The Supreme Court has interpreted the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). There is " 'a liberal federal policy favoring arbitration and the Supreme Court has read the FAA to establish a presumption in favor of the enforceability of contractual arbitration agreements.' " *Walton v. Rose Mobile Homes LLC,* 298 F.3d 470, 473 (5th Cir.2002). "Only a contrary congressional command can override the dictates of the FAA." *Id.* In cases involving the interpretation of the FAA, the Supreme Court has recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum." *Gilmer,* 111 S.Ct. at 1652.

■ In order to overcome this presumption in favor of arbitration, the party opposing arbitration bears the burden of demonstrating that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 2343–46, 96 L.Ed.2d 185 (1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In *McMahon,* the court announced three factors that bear on

Congress' intent: (1) the text of the statute; (2) the legislative history of the statute; and (3) whether "an inherent conflict between arbitration and the underlying purposes [of the statute] exists." *Id.* at 2338. In applying the *McMahon* test, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer,* 111 S.Ct. at 1652 (quoting *Moses H. Cone,* 103 S.Ct. at 941). Thus, we analyze each factor in turn to determine whether Congress clearly expressed an intention to preclude binding arbitration of MMWA claims.

The MMWA neither expressly prohibits nor directly mentions either binding arbitration or the FAA, and the concept of binding arbitration is not included in the statute's reference to informal dispute settlement procedures. The MMWA requires that where a warrantor creates informal dispute settlement procedures, the consumer must exhaust them before filing suit. Binding arbitration, on the other hand, does not contemplate the filing of a lawsuit. As the Fifth and Eleventh Circuits recently recognized, "binding arbitration generally is understood to be a *substitute* for filing a lawsuit, not a prerequisite." *Davis,* 305 F.3d at 1274; *Walton,* 298 F.3d at 475.

■ Furthermore, the express provision of informal dispute settlement procedures does not necessarily preclude the enforcement of an agreement to participate in a formal procedure such as arbitration. *See In re American Homestar of Lancaster,* 50 S.W.3d 480, 487 (Tex.2001). In *Gilmer,* the Supreme Court noted that the Age Discrimination in Employment Act imposes a similar prerequisite. 111 S.Ct. at 1647. Specifically, a claimant must file a charge with the EEOC before pursuing a claim in court, and the EEOC must engage in "informal methods of conciliation, con-

ference, and persuasion." 29 U.S.C. 626(b). The Supreme Court nevertheless concluded that the ADEA's express provision for "out-of-court dispute resolution" is not inconsistent with a contractual agreement to arbitrate under the FAA. *Gilmer, id.*

In addition, the fact that the MMWA grants a judicial forum with concurrent jurisdiction in state and federal courts for MMWA claims is insufficient evidence that Congress intended to preclude binding arbitration. *Davis*, 305 F.3d at 1274 (citing *McMahon*, 107 S.Ct. at 2338, which rejected the argument that "compulsory arbitration under the Securities Exchange Act of 1934 is improper because the statute provides that '[t]he district courts of the United States ... shall have exclusive jurisdiction of violations of this title....'" and *Gilmer*, 111 S.Ct. at 1654, which noted that Congress' grant of concurrent jurisdiction in state and federal courts for ADEA claims is consistent with binding arbitration because "arbitration agreements, like the provision for concurrent jurisdiction, serve to advance the objective of allowing [claimants] a broader right to select the forum for resolving disputes, whether it be judicial or otherwise").

The upshot is that the MMWA merely gives a warrantor the option to include an informal dispute settlement procedure in its written warranty. "It does not speak to other means of settling disputes between parties, such as binding arbitration." *American Homestar*, 50 S.W.3d at 487. We conclude that the text of the MMWA does not invalidate Daimler and the Yaegers' agreement to engage in binding arbitration.

The Yaegers make bold statements in their brief about the legislative history of the MMWA and its effect upon our determination. The Yaegers neglect, however, to recite any of this history in their brief.

Instead, they rely on a citation to a law review article discussing the history.

We note that the ambiguity of the MMWA's legislative history was addressed by the Eleventh Circuit in *Davis*:

When considering a preliminary draft of the MMWA, the Senate reflected that "it is Congress' intent that warrantors of consumer products cooperate with government and private agencies to establish informal dispute settlement mechanisms that take care of consumer grievances without the aid of litigation *or formal arbitration*." S.Rep. No. 91–876, at 22.23 (1970) (emphasis added). As the Fifth Circuit concluded, "there is still no evidence that Congress intended binding arbitration to be considered an informal dispute settlement procedure. Therefore the fact that any informal dispute settlement procedure must be nonbinding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature." *Walton*, 298 F.3d at 476. In *McMahon*, the Supreme Court upheld binding arbitration even though the Securities Exchange Act of 1934's legislative history implied that Congress intended to adopt the *Wilko* [*v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)] attitude that arbitration is an inadequate forum in which to enforce statutory claims. *McMahon*, 482 U.S. at 238, 107 S.Ct. at 2343. *Any congressional intent to prohibit arbitration in the MMWA's legislative history is considerably less clear than the legislative history of the Securities Exchange Act of 1934, which the Supreme Court held did not prohibit binding arbitration in McMahon.*

305 F.3d at 1276 (emphasis added).

In light of the Supreme Court's decision in *McMahon* and the federal appellate court decisions in *Walton* and *Davis* pertaining to this factor, we conclude that the

Yaegers have failed to carry their burden of showing a clear congressional intent to prohibit the binding arbitration of MMWA claims. "[G]iven the absence of any meaningful legislative history barring binding arbitration, coupled with the unquestionable federal policy favoring arbitration," we conclude that Congress did not express a clear intent in the MMWA's legislative history to bar binding arbitration agreements such as the one between the Daimler and the Yaegers. *See Davis, id.*

The Yaegers argue that the binding arbitration provision in their contract with Daimler is contrary to the purposes of the MMWA. Specifically, the Yaegers refer to their belief that binding arbitration would conflict with the MMWA's intent to prevent warrantors from making bold promises that were overridden by "tiny type [that] set forth grossly unfair terms and took away more rights than they gave." Appellee's Brief at 22. The Yaegers further refer to their belief that "it just does not make sense to strictly regulate other types of dispute resolution and yet allow the warrantor free rein to impose binding arbitration under any terms it chooses." *Id.* at 23.

■ As noted above, the MMWA expressly states its three purposes: (1) to improve the adequacy of information available to consumers; (2) to prevent deception; and (3) to improve competition in the marketing of consumer products." 15 U.S.C. § 2302. Despite the Yaegers' *Wilko*-like disdain for arbitration, we conclude that the purposes of the MMWA and the FAA are not in conflict.[3] In fact, "the Supreme Court has repeatedly enforced arbitration of statutory claims where the underlying purpose of the statutes is to protect and inform consumers." *Davis,*

305 F.3d at 1276 (citing *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 985, 99 L.Ed.2d 194 (1988), which states that a fundamental purpose of the Securities Act is the disclosure of information to potential investors; and *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 485–86, 109 S.Ct. 1917, 1922, 104 L.Ed.2d 526 (1989), which holds that parties may arbitrate Securities Exchange Act of 1934 claims). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its function." *Id.* (quoting *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000)). The Supreme Court has held that consumers are able to vindicate their rights in an arbitral forum. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 280, 115 S.Ct. 834, 842, 130 L.Ed.2d 753 (1995) (holding that "Congress, when enacting the [FAA], had the needs of consumers ... in mind"). We agree with these cases that arbitration does not work against the purposes of the MMWA. With reference to the Yaegers' specific concerns, there is no indication that the inclusion of a binding arbitration clause would bring back the days where contractual obligations are overridden by contrary provisions in agate type. Furthermore, it is perfectly consistent for the MMWA to regulate informal dispute mechanisms that are controlled by the warrantor, while not closely regulating third-party controlled arbitrations.

■ The Yaegers contend that we should defer to the Federal Trade Com-

---

**3.** As we note above, in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court held that arbitration was an inade-

quate forum in which to enforce statutory claims. However, this bias against arbitration was abandoned in *McMahon.*

mission's ("FTC") regulations, which prohibit binding arbitration under the MMWA. The MMWA authorizes the FTC to promulgate regulation for the MMWA's internal dispute settlement procedures. *See* 15 U.S.C. § 2310(a). The FTC has stated that "[a] warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract." 16 C.F.R. 703.1(e).

Numerous courts, both state and federal, have considered this issue. We find the Eleventh Circuit's analysis in *Davis* to be the most persuasive. In *Davis*, the court first noted that in determining whether we should defer to the FTC's interpretation of the MMWA, we look to the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In *Chevron*, the Supreme Court stated:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not

simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 843–44, 104 S.Ct. at 2781–82.

In addressing the first prong of the *Chevron* inquiry, we begin by examining the language of the enforcement provision itself. *See Davis*, 305 F.3d at 1278 (quoting *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1307 (11th Cir. 2001)). As we have already discussed above, Congress did not directly address binding arbitration anywhere in the text or legislative history of the MMWA. Because the intent of Congress is unclear, we must proceed to the second prong of the *Chevron* analysis.[4]

Under the second prong of the *Chevron* inquiry, we are required to determine whether the FTC's construction of the statute is reasonable. In making that determination, "we look to the rationale behind the FTC's construction." *Davis*, 305 F.3d at 1278. In its legislative regulations, the FTC reasoned that a decision regarding a warranty dispute may not be binding because "section 110(d) of the Act gives state and federal courts jurisdiction over suits for breach of warranty and service contracts." *See Davis, id.* (quoting 16 C.F.R. § 700.8). Interestingly, the FTC has declared that it "is not now convinced that any guidelines which [referred to

---

4. We note that in *Walton*, the Fifth Circuit held that because Congress did not evince a clear intent to prohibit arbitration in the MMWA, "[t]he clear congressional intent in favor of enforcing valid arbitration agreements controls in this case." 298 F.3d at 478. The *Walton* court's determination was based on its belief that Congress' clear intent

in passing the FAA controlled the MMWA, and the *Walton* court, unlike the *Davis* court, did not examine the second prong of the *Chevron* analysis. Although both courts reach the same ultimate conclusion, we adopt the *Davis* approach that Congress' intent is not clear.

binding arbitration] could ensure sufficient protection for consumers." *See Davis, id.* (quoting 40 Fed.Reg. 60167, 60210 (1975)).

In light of the FTC's declared basis for its interpretation of the MMWA, the *Davis* court held that

> [A] statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement under the FAA. (citation omitted). Thus, the FTC's motive behind the legislative regulation is contradictory to Supreme Court rationale, and we conclude that its interpretation is unreasonable. *See McMahon,* 482 U.S. at 238, 107 S.Ct. at 2343 (refusing to follow Congress' prohibition of arbitration in the Securities Exchange Act of 1934's legislative history when Congress' motive was contradictory to Supreme Court rationale). We also conclude that the FTC's additional rationale is unreasonable. Although the FTC first stated that it looked to a subcommittee staff report (which appears to be no longer be attainable) to determine Congress' intent, the FTC continued evincing its major concern that an arbitral forum will not adequately protect the individual consumers. The Supreme Court in *McMahon,* however, rejected this same hostility shown by the SEC. 482 U.S. at 234 n. 3, 107 S.Ct. at 2341 n. 3 (declining to defer to the SEC's interpretation of the Securities Exchange Act of 1934 based on the SEC's *Wilko* attitude). Instead, the Supreme Court holds that arbitration is favorable to the individual. *See Allied–Bruce Terminix Cos.,* 513 U.S. at 279, 115 S.Ct. at 842–43 (noting that "arbitration's advantages often would seem helpful to individuals, say, com-

plaining about a product, who need a less expensive alternative to litigation"). 305 F.3d at 1279. We agree that the FTC's interpretive regulations are unreasonable in light of clear Supreme Court precedent.[5]

## IV.

■ The Yaegers contend that the binding arbitration provision of the claim form is not enforceable under Indiana's "Lemon Law." The Yaegers argue that the Lemon Law "makes it clear that a consumer does not need to resort to arbitration where an automobile manufacturer's arbitration mechanism is not certified by the Indiana Attorney General as complying with federal and state law requirements." Appellants' Brief at 25. The Yaegers point out that Chrysler's arbitration procedure is not certified by the attorney general, and they argue that "[t]o require the Yaegers to submit to 'binding arbitration' with an uncertified program would thwart the protection afforded consumers by the [Lemon Law], which incorporates the FTC's regulations under the [MMWA]." *Id.*

The Yaegers' contention is based upon their interpretation of Ind.Code § 24–5–13–19, which states that buyers cannot avail themselves of protection under the Lemon Law if they have not "first resorted to an informal procedure established by a manufacturer or in which a manufacturer participates." This limitation upon buyers applies only if (1) the procedure is certified by the attorney general as "(A) complying in all respects with 16 C.F.R. 702" and "(B) complying with any other rules concerning certification adopted by the attor-

---

**5.** In addition to *Davis, Walton,* and *American Homestar,* we have found the holding of the Michigan Supreme Court in *Abela v. General Motors Corp.,* 469 Mich. 603, 677 N.W.2d 325 (2004) and the holding of the Illinois Su-

preme Court in *Borowiec v. Gateway 2000,* 209 Ill.2d 376, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004) to be persuasive on the issue of whether the MMWA forbids the use of predispute binding arbitration.

ney general, including but not limited to the requirement of oral hearings, pursuant to IC 4–22–2." Furthermore, the statute provides that the limitation does not apply if the buyer has not received "adequate written notice from the manufacturer of the existence of the procedure."

As we have discussed above, binding arbitration is not an informal procedure contemplated under the MMWA. Accordingly, binding arbitration is not a proper subject of 16 C.F.R. 703, and it is not a procedure that can be certified by the attorney general in accordance with the federal regulations. Even if we were to accept the proposition that the statute speaks to binding arbitration, the Yaegers still cannot prevail. The emphasis of the statute is upon the limitations put upon a buyer's ability to recover under the Indiana Lemon Law; the statute does not state that a procedure not certified by the attorney general is invalid. Furthermore, we note that the Yaegers argument on the Lemon Law is premised upon the same faulty *Wilko*-based presumption as their previous argument on the MMWA. Contrary to the Yaegers' belief, binding arbitration is a fair and comparatively inexpensive procedure by which consumers may enforce their rights under both the MMWA and the Indiana Lemon Law.

We reverse the trial court and instruct the court to dismiss the Yaegers' suit.

RILEY, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I agree with the majority that Daimler Chrysler has failed to raise its interlocutory appeal under any of the provisions of Indiana Appellate Rule 14. However, I disagree with the majority that we have discretion to hear this appeal under Appel-late Rule 66(B). Consequently, I would dismiss the appeal.

Appellate Rule 14 provides three ways for this Court to hear an interlocutory appeal: (1) Appellate Rule 14(A) allows interlocutory appeals as of right; (2) Appellate Rule 14(B) permits discretionary interlocutory appeals "if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal"; and (3) Appellate Rule 14(C) authorizes other interlocutory appeals only as provided by statute. This appeal does not fall under any of the categories listed for interlocutory appeals as of right. Additionally, there is no statute authorizing this interlocutory appeal. Finally, because Daimler Chrysler did not file a motion requesting certification by the trial court and then file a motion requesting acceptance by this Court, this is not a discretionary interlocutory appeal. Nevertheless, the majority found that it has discretion to hear this appeal under Appellate Rule 66(B).

Appellate Rule 66(B) provides:

No appeal shall be dismissed as of right because the case was not finally disposed of in the trial court or Administrative Agency as to all issues and parties, but upon suggestion or discovery of such a situation, the Court may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the trial court or Administrative Agency.

In *Allstate Insurance Co. v. Scroghan*, 801 N.E.2d 191 (Ind.Ct.App.2004), *trans. denied*, the court acknowledged that other panels of the court of appeals have suggested that we may find jurisdiction to hear an interlocutory appeal outside of Appellate Rule 14. *Id.* at 195. However, the *Allstate* court opted to follow the rea-

soning of *INB National Bank v. 1st Source Bank,* 567 N.E.2d 1200 (Ind.Ct. App.1991), wherein the court held:

> [Rule 66(B) ] should not be interpreted as an alternative authorization to litigants to initiate interlocutory appeals apart from, or in addition to, the authorization provided by [Rule 14]. In addition, we believe it would constitute an abuse of discretion for this court to grant an interlocutory appeal cognizable under [Rule 14(B) ] where the trial court, as here, has expressly refused or denied certification.

*Id.* at 1202. I stand by my previous decision in *Allstate* and echo its reasoning that if we were to allow the use of Appellate Rule 66(B) to supplement our jurisdiction to hear interlocutory appeals under Appellate Rule 14, then the limitations of Appellate Rule 14 would become meaningless. *Allstate,* 801 N.E.2d at 196; *see also Bueter v. Brinkman,* 776 N.E.2d 910 (Ind.Ct. App.2002) (refusing to apply Rule 66(B) to "rescue" an appeal). Additionally, this case is more compelling than *Allstate* because in that case, Allstate requested certification by the trial court, but the court denied it. Here, Daimler Chrysler did not even request certification. Accordingly, I would hold that this Court does not have discretion to hear this appeal and therefore would dismiss it.