William WALKER, Appellant–Plaintiff,

v.

DAIMLERCHRYSLER
CORPORATION, Appellee–Defendant.

No. 27A02–0507–CV–596.

Court of Appeals of Indiana.

Nov. 2, 2006.

Scott M. Cohen, John D. Barker, Harry C. Bradley, Krohn & Moss, LTD, Chicago, IL, Attorneys for Appellant.

Jeffrey P. Smith, W. Randall Kammeyer, Hawk, Haynie, Kammeyer & Chicke-dantz, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

William Walker ("Walker") appeals the trial court's order dismissing his complaint against DaimlerChrysler Corporation ("DaimlerChrysler"), which alleges violations of the Magnuson–Moss Warranty Act ("MMWA") and the Indiana Motor Vehicle Protection Act ("Indiana Lemon Law"), and compelling arbitration of those claims. Walker has not satisfied his burden to show us that Congress intended to preclude binding arbitration under the MMWA. We acknowledge that the Federal Trade Commission ("FTC") has concluded that the MMWA does not permit binding arbitration, but like several other courts that have addressed the issue, we find that interpretation to be unreasonable and therefore will not defer to it. In addition, Walker has not shown that the parties' agreement to arbitrate is invalid under the Indiana Lemon Law. Therefore, we affirm the judgment of the trial court.

### Facts and Procedural History

On May 24, 2004, Walker purchased a 2004 Dodge Dakota ("Dakota") from a DaimlerChrysler authorized dealer. The purchase included certain warranties. Walker purchased the Dakota pursuant to DaimlerChrysler's Employee New Vehicle Purchase/Lease Program ("Program"). The Program offers customers a substantial discount by allowing them to purchase or lease new vehicles at the employee price. To participate in the Program, Walker signed a DaimlerChrysler Employee New Vehicle Purchase/Lease Claim Form ("Claim Form").

At the top of the Claim Form, in bold print, was the following statement: **"THIS**

CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Appellant's App. p. 47. The Claim Form also contains a mandatory arbitration clause, which provides, in pertinent part:

I understand that, *in consideration for the discount received*, **I will not be able to bring a lawsuit for any disputes relating to this vehicle. Instead, I agree to submit any and all disputes through the DaimlerChrysler Vehicle Resolution Process, which includes mandatory arbitration that is binding on both DaimlerChrysler and me.**

\* \* \* \*

I acknowledge that this Form evidences a transaction involving interstate commerce, and, therefore, the Federal Arbitration Act ("FAA") (9 U.S.C. § 2 et. seq.) shall govern the interpretation, enforcement and proceedings of arbitration.

*Id.* (italics added). The next clause of the Claim Form provides, in pertinent part:

I represent to DaimlerChrysler Corporation that, before purchasing or leasing a vehicle under the Program, I received and read the Program Rules and Provisions ("Rules"), specifically including a copy of the document entitled "Vehicle Resolution Process—Binding Arbitration." I hereby acknowledge that (1) I understand the Rules (2) I agree to be bound by them and will comply with them[.]

*Id.* The Rules and Provisions ("Rules") referenced in the Claim Form include a Legal Agreement that details the mandatory binding arbitration procedure. The Legal Agreement provides that participants in the Program "agree that binding arbitration is solely and exclusively the final step for resolving any warranty dispute concerning vehicles purchase or leased under the Program. **They may not bring a separate lawsuit.**" *Id.* at 51.

Shortly after Walker's purchase, several defects arose with the Dakota, including problems with the engine, the interior and exterior trim, and the windshield. Walker brought the Dakota to a DaimlerChrysler authorized dealership for repairs on several occasions, but the repairs were not completed to Walker's satisfaction. As such, Walker's attorney wrote a letter to DaimlerChrysler "revoking his acceptance of the vehicle" and "demand[ing] the return of all funds paid towards [the Dakota], the cancellation of the contracts, and compensation for his damages." *Id.* at 22. DaimlerChrysler refused to comply with Walker's demands, so Walker filed a lawsuit. Count I alleged a breach of written warranty pursuant to the MMWA; Count II alleged a breach of an implied warranty of merchantability pursuant to the MMWA; Count III purported to revoke Walker's acceptance of the Dakota pursuant to section 2310(d) of the MMWA; and Count IV alleged a breach of the Indiana Lemon Law.

In response to Walker's complaint, DaimlerChrysler filed a Motion to Dismiss and Compel Arbitration then a Motion for Summary Judgment, citing the mandatory arbitration language contained in both the Claim Form and the Rules. The trial court granted DaimlerChrysler's motion for summary judgment and entered an order dismissing Walker's complaint and compelling arbitration. Walker now appeals.

### Discussion and Decision

On appeal, Walker argues that the trial court erred in granting DaimlerChrysler's motion to dismiss and compel arbitration. DaimlerChrysler, on the other hand, frames the issue as whether the trial court

properly granted summary judgment in its favor. This conflict is due to the fact that the trial court's order in favor of Daimler-Chrysler includes both dismissal language and summary judgment language. In some cases, this ambiguity would present us with two potentially conflicting standards of review. Here, however, it makes no difference whether we treat the trial court's decision as a dismissal or a grant of summary judgment; this case turns on two questions of law, which we review *de novo*. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 941 (Ind.2005). Specifically, we must determine whether mandatory binding arbitration agreements such as the one in this case are permissible under the MMWA and the Indiana Lemon Law. We address each question in turn.

## I. MMWA Claims

■ Walker first contends that binding arbitration agreements are unenforceable under the MMWA. This is an issue of first impression in Indiana.[1] Most courts that have addressed this issue have concluded that the MMWA allows binding arbitration agreements. We must agree.[2]

### A. Background

We begin with a brief overview of the two federal statutes at the center of this dispute. First, the Claim Form states that the Federal Arbitration Act shall govern the interpretation, enforcement, and proceedings of arbitration. Congress enacted the FAA in 1925 to reverse the longstanding judicial hostility towards arbitration and "to place arbitration agreements on the same footing as other contracts." *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir.2002) (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)), *reh'g denied, cert. denied*, 538 U.S. 945, 123 S.Ct. 1633, 155 L.Ed.2d 486 (2003). Section 2 of the FAA provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 represents a declaration by Congress of a liberal federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As such, there is a presumption in favor of the enforceability of contractual arbitration agreements.

---

1. A panel of this Court did hold that binding arbitration is permissible under the MMWA. *Daimler Chrysler Corp. v. Yaeger*, 818 N.E.2d 527 (Ind.Ct.App.2004). However, the Indiana Supreme Court subsequently granted transfer, thereby vacating this Court's opinion. 831 N.E.2d 744 (Ind.2005). Thereafter, our Supreme Court disposed of the case on procedural grounds and did not reach the merits of the issue. *Daimler Chrysler Corp. v. Yaeger*, 838 N.E.2d 449 (Ind.2005).

2. Of course, arbitration agreements, like any other contract, are subject to general contract law and defenses and can be challenged

"upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. For example, agreements to arbitrate could still be attacked as being unconscionable or as having resulted from fraud or unequal bargaining power. *See Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1273 n. 2 (11th Cir.2002), *reh'g denied, cert. denied; see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Here, we have no such claim before us, so we only address the general enforceability of mandatory binding arbitration agreements under the MMWA.

*Walton v. Rose Mobile Homes LLC,* 298 F.3d 470, 473 (5th Cir.2002) (citing *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927). This presumption applies equally to claims founded on statutory rights. *Id.* (citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)). The United States Supreme Court has emphasized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

Three of the four claims in Walker's complaint allege violations of the Magnuson–Moss Warranty Act. Congress passed the MMWA in 1975 in response to an increasing number of consumer complaints regarding the adequacy of warranties on consumer goods. *Davis,* 305 F.3d at 1272. "The purpose of the MMWA is 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.'" *Id.* (quoting 15 U.S.C. § 2302(a)).

The question presented in this case is whether binding arbitration agreements are enforceable under the MMWA. The MMWA does not explicitly preclude binding arbitration. And though the United States Supreme Court has not yet addressed this aspect of the MMWA, it is worth noting that "[i]n every statutory right case that the Supreme Court has considered, the Court has upheld binding arbitration if the statute creating the right did not *explicitly* preclude arbitration." *Walton,* 298 F.3d at 473 (citing *Green Tree Financial Corp.-Ala. v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (Truth in Lending Act); *Gilmer v.*

*Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484–86, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (Securities Act of 1933); *McMahon,* 482 U.S. at 238, 107 S.Ct. 2332 (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp.,* 473 U.S. at 626–27, 105 S.Ct. 3346 (Sherman Antitrust Act in international transactions)); *see also Davis,* 305 F.3d at 1273.

### B. The *McMahon* Test

■ Though the high court has not yet addressed the specific issue before us, it has established a test to determine whether a specific statute allows binding arbitration. The FAA, standing alone, mandates enforcement of agreements to arbitrate statutory claims, but this mandate, like any statutory directive, may be overridden by a contrary congressional command. *McMahon,* 482 U.S. at 226, 107 S.Ct. 2332. The burden is on the party opposing arbitration to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* at 227, 107 S.Ct. 2332. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from: (1) the statute's text; (2) the statute's legislative history; or (3) an inherent conflict between arbitration and the statute's underlying purposes. *Id.*

The only two federal appellate courts and five of the six state supreme courts that have applied the *McMahon* test to the MMWA have concluded that Congress did not intend to prohibit mandatory binding arbitration under the act. *Davis,* 305 F.3d at 1268, *cert. denied; Walton,* 298 F.3d at 470; *Abela v. Gen. Motors Corp.,* 469 Mich. 603, 677 N.W.2d 325 (2004), *cert. denied,* 543 U.S. 870, 125 S.Ct. 98, 160 L.Ed.2d 117 (2004); *Borowiec v. Gateway*

*2000,* 209 Ill.2d 376, 283 Ill.Dec. 669, 808 N.E.2d 957 (2004), *cert. denied,* 543 U.S. 869, 125 S.Ct. 88, 160 L.Ed.2d 115 (2004); *In re Am. Homestar of Lancaster, Inc.,* 50 S.W.3d 480 (Tex.2001); *Crawford v. Results Oriented, Inc.,* 273 Ga. 884, 548 S.E.2d 342 (2001); *S. Energy Homes, Inc. v. Ard,* 772 So.2d 1131 (Ala.2000); *but see Parkerson v. Smith,* 817 So.2d 529 (Miss. 2002), *reh'g denied.*[3]

 In light of this case law, it comes as no surprise that Walker mounts no significant challenge to the trial court's order vis-à-vis the *McMahon* test. As to the first prong, the statute's text, Walker has not directed us to any language in the MMWA that prohibits mandatory binding arbitration. Walker asserts that Congress included a "specific prohibition against binding dispute resolution in the [MMWA]." Appellant's Br. p. 21. However, Walker does not cite any provision in the MMWA that includes such language, and we can find none. Likewise, regarding the second and third prongs of the *McMahon* test, Walker has neither uncovered any legislative history that reveals an intent on Congress's part to prohibit mandatory binding arbitration of MMWA claims nor exposed an inherent conflict between arbitration and the MMWA's underlying purposes. Walker has failed to satisfy his burden to show that Congress intended to preclude mandatory binding arbitration under the MMWA.

## C. Federal Trade Commission's Interpretation of the MMWA

Walker has, however, attacked the above cases from a different angle. He contends that they were wrongly decided in light of the regulations and comments of the Federal Trade Commission, the federal agency charged with administering the MMWA. The MMWA, 15 U.S.C. §§ 2301–2312, was enacted in 1975. 15 U.S.C. § 2310(a)(1) provides: "Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." Subsection (a)(2) directs the FTC to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies." The MMWA also establishes that any informal dispute settlement procedure is to be used before filing a claim in court. 15 U.S.C. § 2310(a)(3); *see also Walton,* 298 F.3d at 475.

Within months of Congress's enactment of the MMWA, the FTC established a regulation that states, in part, "Decisions of the Mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j). When it published this regulation, the FTC explained:

> Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow this for two reasons. First, as the Staff Report indicates, Congressional intent was that

**3.** As indicated by the citations, the United States Supreme Court has denied certiorari in three cases in which the court held that the MMWA does not prohibit mandatory binding arbitration. Furthermore, only four of the eight participating justices of the Mississippi Supreme Court signed on to the main opinion in *Parkerson v. Smith,* the only case in which a state supreme court held that the MMWA *does* prohibit mandatory binding arbitration. 817 So.2d 529. A fifth justice concurred in result only.

decisions of Section 110 Mechanisms [4] not be legally binding. Second, even if binding mechanisms were contemplated by Section 110 of the Act, the [FTC] is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding. The [FTC] is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers.

\* \* \* \*

[R]eference within the written warranty to any binding, non-judicial remedy is prohibited by [Rule 703] and the [MMWA].

40 Fed.Reg. 60167, 60210 (Dec. 31, 1975).

More recently, the FTC has reaffirmed this stance on the enforceability of mandatory binding arbitration clauses under the MMWA. In 1999, the FTC restated its 1975 finding that "reference within the written warranty to any binding, non-judicial remedy is prohibited by [Rule 703] and the [MMWA]" and announced its belief that "this interpretation continues to be correct." 64 Fed.Reg. 19700, 19708 (Apr. 22, 1999). The FTC expressly decided not to amend 16 C.F.R. § 703.5(j) to allow for binding arbitration, concluding that "Rule 703 will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration." *Id.* at 19708–09.

Walker argues that we should defer to the FTC's interpretation of the MMWA, especially because the FTC's initial interpretation was contemporaneous with the enactment of the MMWA and because that interpretation has remained consistent from the beginning. *See Zenith Radio Corp. v. United States,* 437 U.S. 443, 450, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978) ("An administrative practice has peculiar weight when it involves a contemporaneous construction of a statute by the persons charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." (formatting altered)); *NLRB v. Bell Aerospace Co. Div. Textron, Inc.,* 416 U.S. 267, 274–75, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974) ("[A] court may accord great weight to the long-standing interpretation placed on a statute by an agency charged with its administration."). While these considerations are certainly relevant, for the reasons stated below, we will not defer to the FTC's interpretation.

■ The United States Supreme Court has explained that when a court reviews an agency's construction of a statute that the agency administers, it is confronted with two questions. First, the court must determine whether Congress has directly spoken to the precise question at issue. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the intent of Congress is clear, the court must give effect to the unambiguously expressed intent of Congress. *Id.* at 842–43, 104 S.Ct. 2778. If Congress has not directly addressed the precise question at issue, the court must defer to the agency's construction of the statute unless that construction is unreasonable. *Id.* at 843–44, 104 S.Ct. 2778; *see also Walton,* 298 F.3d at 475.

Here, Congress has not spoken directly as to the permissibility of mandatory binding arbitration. As the United States

4. "Section 110 Mechanisms" is a reference to those informal dispute settlement mecha- nisms authorized by Section 110 of the MMWA, found at 15 U.S.C. § 2310.

Court of Appeals for the Fifth Circuit has noted, "The text of the MMWA does not specifically address binding arbitration, nor does it specifically allow the FTC to decide whether to permit or to ban binding arbitration." *Walton*, 298 F.3d at 475; *see also Davis*, 305 F.3d at 1278 ("[W]e conclude that Congress failed to directly address binding arbitration anywhere in the text or legislative history of the MMWA."). We must determine, then, whether the FTC's construction of the statute is unreasonable.

■ As an aside, we acknowledge Walker's contention that the appropriate standard of review in this case is not whether the FTC's interpretation of the MMWA is *unreasonable,* but whether it is arbitrary, capricious, or manifestly contrary to the statute. The United States Supreme Court has held that this standard should be applied when Congress explicitly leaves a gap for the agency to fill on the issue in question. *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778. In this case, however, Congress did not explicitly leave a gap for the agency to fill regarding the permissibility of mandatory binding arbitration. Congress only instructed the FTC to prescribe rules setting forth minimum requirements for any "informal dispute settlement procedure[s]." 15 U.S.C. § 2310(a)(2). "[B]inding arbitration is not normally considered to be an 'informal dispute settlement procedure,' and it therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations." *Walton,* 298 F.3d at 476; *see also In re Am. Homestar of Lancaster,* 50 S.W.3d at 487. Rather, binding arbitration generally is understood to be a substitute for filing a lawsuit. *Walton,* 298 F.3d at 475; *see also id.* at 476 ("[T]he fact that any informal dispute settlement procedure

must be non-binding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature."). Because Congress did not explicitly leave the FTC a gap to fill on the issue of binding arbitration, the appropriate standard is whether the FTC's interpretation is unreasonable. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778.[5]

■ There are three bases for the FTC's determination that the MMWA precludes binding arbitration: (1) the MMWA's provision for a judicial forum for warranty claims; (2) the MMWA's provision for non-binding "informal dispute settlement"; and (3) the FTC's belief that an arbitral forum will not adequately protect consumers. Of the eight federal appellate and state supreme courts that have addressed the issue in this case, four have addressed the reasonableness of the FTC's construction of the MMWA. All of those courts found the FTC's construction to be unreasonable. *Davis,* 305 F.3d at 1279; *Borowiec,* 808 N.E.2d at 971; *In re Am. Homestar of Lancaster,* 50 S.W.3d at 491; *Ard,* 772 So.2d at 1135 (adopting Justice See's dissent from *S. Energy Homes, Inc. v. Lee,* 732 So.2d 994, 1004–1013 (Ala.1999) (See, J., dissenting)). We find the same.

As to the MMWA's provision for a judicial forum, 15 U.S.C. § 2310(d) grants concurrent jurisdiction to state and federal courts for MMWA claims. The FTC has interpreted this provision as a prohibition on binding arbitration agreements. *See* 16 C.F.R. § 700.8. However, it is well-established that "a statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement." *Davis,* 305 F.3d at 1279 (citing *Gilmer,* 500 U.S. at 29, 111 S.Ct. 1647, and *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332); *see also*

---

**5.** We also note that Walker has failed to explain to us how the outcome would differ if the "arbitrary, capricious, or manifestly contrary to the statute" standard applied.

*id.* at 1274 ("[A] statute's provision for a private right of action alone is inadequate to show that Congress intended to prohibit arbitration."). Therefore, the fact that the MMWA allows for judicial resolution of claims does not preclude enforcement of a mandatory binding arbitration agreement. *See Walton*, 298 F.3d at 475 ("[B]inding arbitration generally is understood to be a substitute for filing a lawsuit[.]").

Regarding the MMWA's provision for non-binding "informal dispute settlement," 15 U.S.C. § 2310(a)(3) provides that if a warrantor establishes an informal dispute settlement mechanism and incorporates that mechanism into its written consumer product warranty, then "the consumer may not commence a civil action (other than a class action) . . . unless he initially resorts to such procedure." Again, the FTC interpreted this provision as a prohibition on binding arbitration agreements. *See* 16 C.F.R. § 703.5(j) ("Decisions of the Mechanism shall not be legally binding on any person.") and 40 Fed.Reg. 60167, 60210 (asserting that binding arbitration is not allowed under 16 C.F.R. § 703.5(j)); *see also* 64 Fed.Reg. 19700, 19708 (stating that FTC's decision that MMWA bars binding arbitration is based on MMWA's provision for non-binding informal dispute settlement). However, "[t]he fact that the MMWA regulates § 2310(a) informal dispute settlement procedures does not mean that the act precludes a court from enforcing a valid binding arbitration agreement." *Davis*, 305 F.3d at 1275; *see also Walton*, 298 F.3d at 476. "[S]ection 2310(a)(3) merely gives a warrantor the *option* to include an informal dispute settlement mechanism in its written warranty," and "expressly providing for one type of out-of-court settlement mechanism does not necessarily preclude enforcing an agreement to participate in another." *In re Am. Homestar of Lancaster*, 50 S.W.3d at 488. The MMWA's provision for non-binding

informal dispute settlement procedures does not preclude enforcement of a mandatory binding arbitration agreement.

Finally, we address the FTC's belief that an arbitral forum will not adequately protect consumers. Upon adopting its regulations under the MMWA in 1975, the FTC noted that "it is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding." 40 Fed. Reg. at 60210. The FTC was not "convinced that any guidelines which it set out could ensure sufficient protection for consumers." *Id.* The FTC reaffirmed this stance in 1999. *See* 64 Fed.Reg. at 19708.

In the past, the judiciary shared the FTC's grim view of arbitration. In 1953, the United States Supreme Court made clear its opposition to binding arbitration agreements in *Wilko v. Swan*, 346 U.S. 427, 431–38, 74 S.Ct. 182, 98 L.Ed. 168 (1953). However, the Court subsequently rejected such hostility toward arbitration, *see Davis*, 305 F.3d at 1279 (citing *McMahon*, 482 U.S. at 234, 107 S.Ct. 2332 n. 3), and in 1989 it expressly overruled *Wilko*. *Rodriguez de Quijas*, 490 U.S. at 481, 109 S.Ct. 1917. More recently, the Court noted that consumers might often prefer arbitration. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 279, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) ("Congress, when enacting [the FAA], had the needs of consumers . . . in mind. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation."). To the extent that the FTC's construction of the MMWA is based on its belief that an arbitral forum will not adequately protect consumers, that construction is unreasonable.

Having found that the FTC's construction of the MMWA is unreasonable, we will not defer to it. *See Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. Instead, because we concluded above that Walker failed to satisfy his burden to show that Congress had a contrary intent, we follow the liberal federal policy favoring arbitration agreements and seven of the eight federal appellate and state supreme courts that have addressed the issue and hold that mandatory binding arbitration agreements are permissible under the MMWA.[6]

## II. Indiana Lemon Law Claim

■ Walker's complaint also included a claim under the Indiana Lemon Law. "Lemon Laws" have been enacted across the country in response to the problem "that once the buyer has bought a lemon, the dealer or manufacturer, for any number of reasons, is either unwilling or unable to take all steps necessary toward giving the buyer what the dealer and the manufacturer promised: a defect free, safe and reliable automobile reasonably worth its purchase price." Harold Greenberg, *The Indiana Motor Vehicle Protection Act of 1988: The Real Thing for Sweetening the Lemon or Merely a Weak Artificial Sweetener?*, 22 Ind. L.Rev. 57, 58 (1989).

Walker argues that he cannot be compelled to arbitrate his Indiana Lemon Law claim because DaimlerChrysler's arbitration program has not been certified by the Indiana Attorney General's office. Specifically, Walker contends that "[t]o require Walker to submit to 'binding arbitration' with an uncertified program would thwart the protection afforded consumers by the [Indiana Lemon Law], which incorporates

the FTC's regulations under the [MMWA]." Appellant's Br. p. 23. Walker's contention is based upon his interpretation of Indiana Code § 24–5–13–19, which states that a buyer is not protected under the Indiana Lemon Law if he has not "first resorted to an informal procedure established by a manufacturer or in which a manufacturer participates" if that procedure has been certified by the attorney general and the buyer has received "adequate written notice from the manufacturer of the existence of the procedure."

We reject Walker's argument for two reasons. First, binding arbitration is not an "informal procedure" and therefore is not subject to the terms of Indiana Code § 25–5–13–19. *Walton*, 298 F.3d at 476 ("[B]inding arbitration is not normally considered to be an 'informal dispute settlement procedure,' and it therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations."); *see also In re Am. Homestar of Lancaster*, 50 S.W.3d at 487. Second, even if we were to accept that the statute speaks to binding arbitration, the statute *does not state that a procedure not certified by the attorney general is invalid.* Rather, the statute simply says that if a procedure is certified by the attorney general and the buyer has received adequate notice of the existence of the procedure, the buyer must resort to the procedure before turning to the protections of the Indiana Lemon Law. The trial court properly compelled arbitration of Walker's claim under the Indiana Lemon Law.

## Conclusion

The trial court did not err in dismissing Walker's complaint and compelling arbitra-

---

6. Walker also cites *Chevron* and *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004), for the proposition that the trial court's failure to defer to the FTC's interpretation constitutes a violation of the Supremacy Clause of the United States Constitution. A close reading of *Chevron* and *Pfennig* reveals that the United States Supreme Court made absolutely no mention of the Supremacy Clause in either of those cases. As such, we fail to see the merit in Walker's claim.

tion of his claims under the MMWA and the Indiana Lemon Law.

Affirmed.

BAKER J., and CRONE, J., concur.