**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0974-20

LAVEAU CERVALIN,

    Plaintiff-Appellant,

v.

UNIVERSAL GLOBAL, INC.,
d/b/a METRO HONDA, and
TRUIST BANK, f/k/a BRANCH
BANKING AND TRUST
COMPANY,[1]

    Defendants-Respondents.

_____

Submitted June 8, 2021 – Decided July 6, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, L-1085-20.

---

[1] Plaintiff named as a defendant "Branch Banking and Trust Company a/k/a BB&T." Truist Bank answered on behalf of that defendant, stating it was formerly known as Branch Banking and Trust Company (BB&T) and had been improperly pleaded as "Branch Banking and Trust Company a/k/a BB&T." Based on that unchallenged representation, we amend the caption accordingly.

Houston & Totaro, attorneys for appellant (Madeline L. Houston and Melissa J. Totaro, on the briefs).

Piro Zinna Cifelli Paris & Genitempo, LLC, attorneys for respondent Universal Global, Inc., and co-counsel for respondent Truist Bank; and Ballard Spahr, LLP, co-counsel for respondent Truist Bank (Todd M. Galante, Brian Frankoski, and William P. Reiley, on the joint brief).

PER CURIAM

Plaintiff appeals an order compelling arbitration and dismissing with prejudice his complaint. Because the language of the parties' agreements clearly sets forth an intent to arbitrate, we affirm the aspect of the order compelling arbitration. We reverse the aspect of the order dismissing the complaint with prejudice because the appropriate procedural step was to stay the case pending the arbitration, not to dismiss it with prejudice, and remand with a direction that a new order be entered compelling arbitration and staying the action pending conclusion of those proceedings.

I.

Plaintiff purchased a used 2016 Honda Pilot from defendant Universal Global, Inc., d/b/a Metro Honda (Metro). As part of the transaction, plaintiff and Metro entered into and executed two agreements, both of which had an

A-0974-20

arbitration clause. The Motor Vehicle Retail Order contained the following

arbitration clause:

> AGREEMENT TO ARBITRATE ALL CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS ACTION IN COURT AND IN ARBITRATION.
>
> The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. By agreeing to arbitrate, the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes. Further, the parties understand that they may not pursue any claim, even in arbitration, on behalf of a class or to consolidate their claim with those of other persons or entitles. Consumer Fraud, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of statutory claims subject to arbitration under this agreement. The arbitration shall be administered by the American Arbitration Association under its Consumer Arbitration Rules, before a single arbitrator who shall be a retired judge or an attorney. Dealership shall advance both party's filing, service, administration, arbitrator, hearing, and other fees, subject to reimbursement by decision of the arbitrator. Each party shall bear his or her own attorney, expert, and other fees and costs, except when awarded by the arbitrator under applicable law. The arbitration shall take place in New Jersey at a

A-0974-20

mutually convenient place agreed upon by the parties or selected by the arbitrator. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. If any part of this agreement is found to be unenforceable for any reason, the remaining provisions shall remain enforceable. In the event that any claims are based on a lease, finance, or other agreement between the parties related to this sale or lease as well as this agreement, and if such lease, finance or other agreement contains a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other arbitration provision shall govern and control. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

Plaintiff signed directly below the arbitration.

Plaintiff and Metro also executed a document entitled "RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)" (finance contract), which stated on the first page, "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements in this contract." The finance contract contained the following language on the first page directly above plaintiff's signature:

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute

4

by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

The fifth page of that contract contained an arbitration clause, which provided in part:

ARBITRATION PROVISION

PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us . . . , which arises out of or relates to your credit application, purchase or

A-0974-20

condition of this vehicle, this contract or any resulting transaction or relationship . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. . . . You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to applicable rules. . . . Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

Plaintiff signed the bottom of the page containing the arbitration clause. Metro subsequently assigned the finance contract to BB&T.

According to plaintiff, after he purchased the car, he discovered it "had serious pre-existing and undisclosed physical damage." He reported the damage to Metro, which "refused to repair the damage or offer any other type of relief to plaintiff."

Plaintiff filed a complaint, naming Metro and BB&T as defendants. Pleading common-law fraud and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -226 (CFA), and the Magnuson-Moss Warranty —

6

Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 to 2312 (MMWA), plaintiff alleged Metro: (1) sold him the car at a higher price than advertised; (2) orally agreed to one price but included additional charges improperly or unbeknownst to him; and (3) made misrepresentations in regard to the car's condition and history of damage and whether it qualified as a Honda certified pre-owned vehicle. After filing answers, defendants moved to compel arbitration and stay the case. Plaintiff opposed the motion, arguing the arbitration clauses were unenforceable because they contained conflicting and unclear provisions and were displayed in an inconspicuous manner and that, even if the motion judge found the clauses to be enforceable, the MMWA claim was not subject to arbitration.

In a written order and opinion, the motion judge granted the aspect of defendants' motion seeking to compel arbitration and dismissed the complaint with prejudice. The motion judge found "the two arbitration provisions are clear and unambiguous waivers of right to seek judicial remedy and therefore are enforceable" and any differences in the arbitration clauses were resolved by the supersession clause of the Retail Order, which provided that if a finance agreement "contain[ed] a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other

7

arbitration provision shall govern and control." The motion judge rejected plaintiff's argument that the MMWA claim could not be compelled to binding arbitration, citing Davis v. S. Energy Homes, Inc., 305 F.3d 1268 (11th Cir. 2002). The motion judge noted defendants had requested a stay pending arbitration but "dismisse[d] this action in recognizing that the arbitration is binding." Plaintiff appeals that decision, making the same arguments he made to the motion judge and asserting the Retail Order's supersession clause does not resolve the differences between the arbitration clauses.

## II.

We review de novo an order compelling arbitration. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive."). When reviewing orders about arbitration, we recognize arbitration is a "favored means of dispute resolution," Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006), and "are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186

(2013); see also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (recognizing federal and state policy favoring arbitration).

The Retail Order states it is governed by New Jersey law; the arbitration provision in the finance contract states it is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16 (FAA). Under either law, we apply New Jersey contract-law principles. Under the FAA, arbitration is a creature of contract. 9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); see also Hirsch, 215 N.J. at 187 (explaining that under New Jersey law, arbitration is also a creature of contract). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

In determining whether a valid agreement to arbitrate exists, we apply "state contract-law principles." Hojnowski, 187 N.J. at 342; see also Kernahan, 236 N.J. at 317-18. Under those principles, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,

9

489 U.S. 468, 478 (1989)). Thus, our first inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute. Ibid.; see also Atalese, 219 N.J. at 442.

That inquiry begins with the language of the arbitration clauses. To reflect mutual assent to arbitrate, the terms must be "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right." Atalese, 219 N.J. at 443. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444; see also Flanzman, 244 N.J. at 137. If "at least in some general and sufficiently broad way" the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447; see also Arafa v. Health Express Corp., 243 N.J 147, 172 (2020) (finding jury trial waiver "was knowing and voluntary in light of . . . broad agreement to resolve 'all disputes' between the parties through binding arbitration").

Applying those principles to the arbitration clauses at issue, we agree with the motion judge that the two arbitration provisions are clear and unambiguous waivers of the right to seek judicial remedy and are enforceable. The arbitration clause in the Retail Order begins in capital letters, telling the buyer to read the arbitration provision "CAREFULLY" and advising "IT LIMITS YOUR

A-0974-20

RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION."
It goes on to state the parties "agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement."

The arbitration clause of the finance contract also contains sufficiently broadly-worded and clear language regarding the waiver of a right to proceed in court. It asks the buyer to "PLEASE REVIEW" the clause, saying it is "IMPORTANT" and "AFFECTS YOUR LEGAL RIGHTS." It explains the clause means "ANY DISPUTE" will be "DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." Plaintiff faults the language of the finance contract for not being sufficiently absolute, claiming by saying "EITHER YOU OR WE MAY CHOOSE" arbitration, the provision is somehow vague. We find that argument unpersuasive, especially when it disregards additional language in the clause stating any claim or dispute "shall" be resolved "by neutral, binding arbitration and not by a court action" if arbitration is elected by either party. Plaintiff's additional arguments faulting the finance contract's arbitration clause are equally unpersuasive and do nothing to diminish the clear language waiving the right to seek a judicial remedy.

11

Plaintiff criticizes the two clauses for being inconsistent. Any inconsistencies are of no consequence, especially considering that plaintiff in opposing defendants' motion certified he had made no effort to read the arbitration clauses. See Roman v. Bergen Logistics, LLC, 456 N.J. Super. 157, 175 (App. Div. 2018) (finding "unavailing" the plaintiff's claims "she was unable to read or understand" an agreement containing an arbitration clause she had executed). Moreover, any inconsistencies are resolved by the supersession clause contained in the Retail Order:

> In the event that any claims are based on a lease, finance, or other agreement between the parties related to this sale or lease as well as this agreement, and if such lease, finance or other agreement contains a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other arbitration provision shall govern and control.

The supersession clause directly precedes the following language:

> THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

Plaintiff executed the document just below that language. The purpose of the supersession clause is to resolve inconsistencies, and its meaning is clear: if a

A-0974-20

claim is "based on" the Retail Order and another agreement, and those agreements contain arbitration clauses that differ, the provisions of the other agreement will govern. A reasonable consumer reading each document would have a clear understanding of which provision applied. Plaintiff attempts to create an ambiguity out of the clause's use of the phrase "based on," but we see no ambiguity in that simple language.

Plaintiff's reliance on Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577 (App. Div. 2004), which was decided before Atalese, is misplaced. Rockel involved a car sale with two contracts containing arbitration clauses. The arbitration clause in the retail order in that case was only fifty-five words long and contained no clear reference to a waiver of the right to maintain a court action. The finance contract in that case was "far more expansive," even extending the right to compel arbitration to non-parties. Id. at 582. Those differences are not present here. The minor differences that may exist are resolved by the supersession clause and are not sufficient to overcome the clear language waiving the right to sue.

We now turn to plaintiff's MMWA claims. Plaintiff faults the motion judge for "defer[ing] to the Davis [c]ourt's findings that MMWA claims may be subject to binding arbitration." Defendants tell us we need not decide if the

13

MMWA claims are subject to arbitration because the arbitration clauses delegate to the arbitrator the authority to make that decision. In reply, plaintiff asserts both parties briefed the delegation issue and the motion judge "decided" the issue in plaintiff's favor.

We don't have copies of those briefs,[2] but here's what we know: the motion judge determined the MMWA-claim arbitrability issue, thereby effectively rejecting any argument that the arbitrability decision was delegated to the arbitrator. Defendant did not cross-appeal the motion judge's decision to decide that issue. Accordingly, we decline to address the delegation issue. Reich v. Borough of Fort Lee Zoning Bd. of Adjustment, 414 N.J. Super. 483, 499 n.9 (App. Div. 2010) (finding "a respondent must cross-appeal to obtain relief"). Instead, we assume – without deciding – that the judge held the arbitrability of the MMWA was a matter for the court to decide.

---

[2] The motion judge summarized defendant's response to plaintiff's MMWA argument as "cit[ing]" Davis, 305 F.3d 1268, and Walton v. Rose Mobile Homes LLC, 298 F.3d 470, 475 (5th Cir. 2002). The judge made no mention of any argument based on a delegation of the issue to the arbitrator. See Morgan v. Sanford Brown Inst., 225 N.J. 289, 306 (2016) (noting defendants had not argued to the motion court "it lacked jurisdiction to decide whether the parties agreed to arbitration because that role was for the arbitrator alone" but instead filed a brief seeking an order compelling arbitration).

A-0974-20

On the issue of whether the MMWA claim is subject to arbitration, we agree with the motion judge's decision to follow Davis, 305 F.3d 1268, which is one of the vast majority of cases finding MMWA claims to be arbitrable compared to the handful of cases finding them to be not arbitrable. Compare id. at 1280; Walton, 298 F.3d 470; Krusch v. TAMKO Bldg. Prods., Inc., 34 F. Supp. 3d 584, 594-95 (M.D.N.C. 2014); In re Apple iPhone 3G Prods. Liab. Litig., 859 F. Supp. 2d 1084, 1090-91 (N.D. Ca. 2012); Jones v. Gen. Motors Corp., 640 F. Supp. 2d 1124, 1135-44 (D. Ariz. 2009); Patriot Mfg., Inc. v. Dixon, 399 F. Supp. 2d 1298, 1306-07 (S.D. Ala. 2005); Dombrowski v. Gen. Motors Corp., 318 F. Supp. 2d 850, 850-51 (D. Ariz. 2004); Pack v. Damon Corp., 320 F. Supp. 2d 545, 558 (E.D. Mich. 2004), rev'd in part on other grounds, 434 F.3d 810 (6th Cir. 2006); Patriot Mfg., Inc. v. Jackson, 929 So. 2d 997, 1005-06 (Ala. 2005); S. Energy Homes, Inc. v. Ard, 772 So. 2d 1131, 1135 (Ala. 2000); Results Oriented, Inc. v. Crawford, 538 S.E.2d 73, 81 (Ga. Ct. App. 2000), aff'd, Crawford v. Results Oriented, Inc., 548 S.E.2d 342 (Ga. 2001); Borowiec v. Gateway 2000, Inc., 808 N.E.2d 957, 970 (Ill. 2004); Walker v. DaimlerChrysler Corp., 856 N.E.2d 90, 93 (Ind. Ct. App. 2006); Hemphill v. Ford Motor Co., 206 P.3d 1, 12 (Kan. Ct. App. 2009); Howell v. Cappaert Manufactured Hous., Inc., 819 So. 2d 461, 464 (La. Ct. App. 2002); Abela v.

15

Gen. Motors Corp., 677 N.W.2d 325, 327-28 (Mich. 2004); and In re Am. Homestar of Lancaster, Inc., 50 S.W.3d 480, 492 (Tex. 2001), with Rickard v. Teynor's Homes, Inc., 279 F. Supp. 2d 910 (N.D. Ohio 2003); Browne v. Kline Tysons Imps., Inc., 190 F. Supp. 2d 827 (E.D. Va. 2002); Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958 (W.D. Va. 2000); Raesly v. Grand Hous., Inc., 105 F. Supp. 2d 562, 573 (S.D. Miss. 2000); Wilson v. Waverlee Homes, Inc., 954 F. Supp. 1530 (M.D. Ala. 1997); Koons Ford of Baltimore, Inc. v. Lobach, 919 A.2d 722 (Md. 2007); and Parkerson v. Smith, 817 So. 2d 529 (Miss. 2002).[3]

We do not follow the majority blindly or just because it is the majority. We follow the majority because we agree that (1) "the text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims," Walton, 298 F.3d at 478; and (2) we are not bound by the "unreasonable" interpretation of the MMWA by the Federal Trade Commission (FTC), Davis, 305 F.3d at 1280, which reflects the FTC's "skepticism" toward arbitration, Jones, 640 F. Supp. 2d at 1141, and is

---

[3] We do not include in this list unpublished cases, R. 1:36-3, or Kolev v. Euromotors West/The Auto Gallery, 658 F.3d 1024 (9th Cir. 2011), withdrawn, 676 F.3d 867 (9th Cir. 2012), on which plaintiff relies even though it was expressly withdrawn by the Ninth Circuit.

A-0974-20

counter to federal policy favoring arbitration. See id. at 1141-42 ("The Supreme Court has been quite clear that such innate suspicion of arbitration is not sufficient to render arbitration agreements unenforceable") (citing Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 226 (1987)) ("[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals should inhibit the enforcement of the [FAA] in controversies based on statutes"); see also Flanzman, 244 N.J. at 133 (finding "the federal policy expressed by Congress in the FAA" and the legislative and judicial policy of our state favor arbitration).

To the extent we do not address any other arguments made by plaintiff, it is because we find insufficient merit in them to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

### III.

We affirm the aspect of the order compelling arbitration. We reverse the aspect of the order dismissing the case with prejudice. See N.J.S.A. 2A:23B-7(g) (stating "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration."); see also 9 U.S.C. § 3 (stating a court action should be stayed if the action involves "any issue referable to arbitration"). We remand for entry of a new order and

direct that the new order compel arbitration and stay the civil action pending those proceedings.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0974-20